**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-03355-MSK

**SHARON L. NAVARRO,**

    Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

    Defendant.[1]

**OPINION, ORDER, AND JUDGMENT**

**THIS MATTER** comes before the Court on Plaintiff Sharon L. Navarro's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.     Jurisdiction**

Ms. Navarro filed a claim for disability insurance benefits pursuant to Title II. She asserted that her disability began on August 1, 2004. After her claims were initially denied, Ms. Navarro filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on October 27, 2010.

After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Navarro met the insured status requirements of the Social Security Act through December 31, 2009; (2)

---

[1] At the time Ms. Navarro filed her appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

she had not engaged in substantial gainful activity since August 1, 2004; (3) she had two severe impairments: affective disorder and anxiety disorder; (4) neither of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Ms. Navarro had the Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels subject to two non-exertional limitations - a Specific Vocational Preparation (SVP) of level 2 and no more than occasional interaction with the general public; (6) she was unable to perform any of her past relevant work; and (7) she was not disabled because she was able to perform other jobs in the national economy, including order filler and router.

The Appeals Council denied Ms. Navarro's request for review of the ALJ's decision. Consequently, the ALJ's decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Navarro's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

**II.     Material Facts**

Having reviewed the record in light of the issues raised, the material facts are as follows. In addition to mental health impairments, Ms. Navarro has a history of recurrent hiatal hernias and severe gastrointestinal symptoms. She underwent surgery in 2002 and 2003 to repair a hiatal hernia and resolve persistent gastroesophageal reflux disease. Roughly one week prior to the 2003 surgery, Dr. Lunt performed a panendoscopy that revealed the hiatal hernia as well as severe esophageal inflammation and reflux. The surgeon who performed the 2003 surgery, Dr. Zimmer, noted in his records that Ms. Navarro had a recurring hiatal hernia with significant gastroesophageal reflux. Although the records indicate that after her 2003 surgery, Ms. Navarro

had a slow but uneventful recovery, but that she continued to have gastrointestinal problems. A panendoscopy in May 2005 did not reveal any esophagitis, but in July 2005 Ms. Navarro reported increased diarrhea to her gastroenterologist, Dr. Lunt. A colonoscopy and polypectomy from the same month indicated acute surface inflammation and increased diarrhea. In March 2007, a surgical pathology report showed that hyperplastic polyps in Ms. Navarro's colon that were irritated and inflamed, and in August 2007, Ms. Navarro reported to her treating physician, Dr. Nevarez, that she had persistent diarrhea and bloody stools. A panendoscopy performed by Dr. Lunt in July 2010 indicated moderately severe, erosive, and reflux-induced esophagitis as well as a 5 cm hiatal hernia. Dr. Lunt's notes also reflect that Ms. Navarro was suffering daily symptoms of gastroesophageal reflux disease. In August 2010, Ms. Navarro underwent a gastric emptying study had normal results, and a pharyngoesophagram that showed large volume gastroesophageal reflux and reflux esophagitis.

At Step 2, the ALJ found that Ms. Navarro's hiatal hernia was not a severe impairment because "there is no objective medical evidence that this condition poses more than minimal functional limitations." This finding was based on Ms. Navarro's slow but uneventful recovery from her 2003 hiatal hernia surgery as well as her normal gastric emptying study from August 2010. The ALJ also wrote that: "...[Ms. Navarro] testified that she [stopped working at a jewelry store in March 2006] because she had difficulty handling people at the mall, had panic attacks, had stress regarding production and was depressed when she did not meet her quota." Ms. Navarro's hiatal hernia was not discussed at any other point in the decision.

### III.   Issues Presented

Ms. Navarro raises three challenges to the Commissioner's decision: (1) that the ALJ erred in failing to find that Ms. Navarro's gastrointestinal disorder was a severe impairment at

Step 2; (2) that the RFC finding failed to include Ms. Navarro's non-exertional limitations and therefore was not based on substantial evidence; and (3) that the ALJ erred in disregarding the opinions of the vocational expert. The Court concludes that Ms. Navarro's first challenge warrants reversal and remand for further proceedings at Step 2, and if necessary, Steps 3 through 5 of the sequential disability evaluation analysis, thus it is unnecessary to address her remaining challenges.[2]

### IV. Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

---

[2] Ms. Navarro submitted additional medical evidence with her appeal to the District Court. Normally, this new evidence would necessitate a preliminary determination as to whether that evidence requires a remand for further consideration under sentence six of 42 U.S.C. § 405(g). However, because the Court remands this matter for further proceedings, the issue is moot. On remand, the ALJ should consider this new evidence and whether it is material to the disability decision. *See Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991) (remanding for further proceedings on account of other error and noting agency will need to determine effect of new evidence submitted in the interim).

### V.     Discussion

At Step 2, the ALJ found only mental health impairments to be severe.  Neither Ms. Navarro's hiatal hernia nor any other gastrointestinal disorder was identified as a severe impairment.  As to the hiatal hernia, the ALJ found no objective medical evidence suggesting that this condition caused more than minimal functional limitation. The ALJ cited Ms. Navarro's slow and uneventful recovery from her December 2003 hiatal hernia surgery, a normal gastric emptying study from August 2010, and the fact that Ms. Navarro had worked at a jewelry store from December 2005 to March 2006 but quit this job due to difficulty with people, panic attacks, stress, and depression.  No mention is made of Ms. Navarro's other gastrointestinal symptoms, testing or treatment.

Ms. Navarro argues the ALJ erred in failing to consider the Vocational Expert's testimony, Ms. Navarro's testimony, and the fact that she has required multiple surgeries.  The Commissioner responds that the ALJ's decision was correct because Ms. Navarro failed to present evidence that her hiatal hernia causes more than a minimal effect on her ability to perform basic work activities.  Additionally, the Commissioner argues that any error at Step 2 is harmless because the ALJ continued his analysis at Steps 3 through 5.

Step 2 of the sequential disability evaluation analysis requires the ALJ to consider the medical severity of the claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a).  Although the existence of a condition or ailment alone is not enough, a claimant need only make a *de minimis* showing of impairment to satisfy the requirements of Step 2.  *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (*citing Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287 (1987)).

A Step 2 finding is based on medical evidence alone, and does not include consideration of evidence relating to age, education, and work experience.  SSR 85-28; *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988); 20 C.F.R. § 404.1508 ([a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms).  An error at Step 2 may be harmless if the ALJ finds that some other impairment is severe and continues to the remaining steps in the sequential disability evaluation, taking all impairments into account in determining the Claimaint's Residual Functional Capacity.  *Grotendorst v. Astrue*, 370 Fed.Appx. 879, 883 (10th Cir. 2010); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); 20 C.F.R. §§ 404.1523 and 1545.

The question presented is whether the ALJ failed to consider objective medical evidence in the record that indicated that Ms. Navarro's hiatal hernia (or other gastrointestinal impairment) caused more than minimal functional limitations and, if so, whether this error was harmless.

The decision reflects some consideration of medical records that refer to Ms. Navarro's hiatal hernia, but it ignores other references and entirely excludes consideration of the multitude of Ms. Navarro's other gastrointestinal conditions described in her treatment records.  For example, a year after Ms. Navarro's initial surgery to repair a hiatal hernia, a 2003 panendoscopy showed a hiatal hernia and severe esophageal inflammation and reflux.  These results came roughly one year after Ms. Navarro had her initial surgery to repair a hiatal hernia.  After Ms. Navarro's "slow but uneventful recovery" from her second surgery to repair a hiatal hernia in December 2003, Ms. Navarro continued to have medically documented gastrointestinal problems.  A July 2005 colonoscopy and polypectomy showed acute surface inflammation and she reported increased diarrhea. A March 2007 pathology report showed irritated and inflamed hyperplastic polyps in Ms. Navarro's colon.  In August of the same year, Dr. Nevarez noted that

Ms. Navarro was experiencing persistent diarrhea. A July 2010 panendoscopy revealed moderately severe, erosive, and reflux-induced esophagitis as well as a 5cm hiatal hernia, and Dr. Lunt's notes reflect that Ms. Navarro experienced daily symptoms of gastroesophageal reflux disease. In August 2010, a pharyngoesophagram indicated large volume gastroesophageal reflux and reflux esophagitis. These records indicate at least minimal impairment due to a hiatal hernia. As such, they should have been considered at Step 2.

At Step 2, the decision also reflects improper consideration of matters outside the medical evidence. *See* SSR 85-28   The ALJ's Step 2 finding was improperly based, in part, on Ms. Navarro's testimony that she quit her job at a jewelry store, where she had worked from December 2005 to March 2006, because she had difficulty handling people and had panic attacks, stress, and depression.

Having found error at Step 2 based, on the one hand, upon a failure to consider all the medical evidence related to the functional limitations and, on the other hand, improper consideration of Ms. Navarro's hearing testimony, the Court next determines whether this error was harmless. As noted, an error at Step 2 may be harmless if all impairments are considered in subsequent analysis. *Grotendorst*, 370 Fed.Appx. at 883; 20 C.F.R. §404.1545(e).

The decision includes the statement that "[in making an RFC finding], the undersigned must consider all of the claimant's impairments, including impairments that are not severe," and that the ALJ "[carefully] considered the entire record," these assertions are not supported in the decision. Taking the statement that the entire record was considered at face value, one would expect further discussion of Ms. Navarro's hiatal hernia, the medical evidence related to her all of her medical treatment, and Ms. Navarro's statements regarding her subjective symptoms. However, the analysis at Steps 3, 4, and 5 does not mention Ms. Navarro's hiatal hernia or any

related medical evidence or symptoms. No limitations stemming from Ms. Navarro's gastrointestinal problems were included in the Step 4 RFC finding or in the questions posed to the vocational expert. Given this lack of further analysis, the Court concludes that the record was either not reviewed carefully or the evidence was not sufficiently explicated. In either event, the medical evidence and subjective testimony with regard to Ms. Navarro's gastrointestinal impairments was not given further consideration after Step 2. As such, the error at Step 2 is not harmless.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED**, and the case is **REMANDED** for further proceedings at Step 2, and if appropriate, Steps 3, 4, and 5. The Clerk shall enter a Judgment in accordance herewith. Any request for costs or attorney fees shall be made within 14 days of the date of this Opinion, Order, and Judgment.

DATED this this 5th day of May, 2013

**BY THE COURT:**

*Marcia S. Krieger*
_____

Marcia S. Krieger
United States District Judge